This is the third time that this case has been before this court. Justice Welch, you authored and were involved in the two prior decisions which we call Stevens 1 and Stevens 2. This case is currently before you on a Rule 308 certified question stemming from the trial court and what jurisdiction or authority the trial court had to act when this case was remanded after the court's decision in Stevens 2. In Stevens 2, this court, its opinion states not just once but twice that the case which had come up to this court after a bench trial order in favor of the Newmans against the bank stated twice that the court vacated and remanded for a new trial limited to damages flowing from the breach of fiduciary duty and conversion claims based on the bank's misapplication of the proceeds of the letter of credit which was properly alleged in the Newmans' amended third-party complaint and affirmed by this court on appeal in Stevens 1. That language appears in both paragraphs 1 and 56 of the Stevens 2 opinion. It's the bank's position that on remand the only thing that could happen was a new trial limited to damages flowing from the misapplication of the letter of credit proceeds as alleged in the third-party complaint or the amended third-party complaint at that time that was at issue in Stevens 1. If you go back and read the Stevens 1 opinion, what occurred there was there had been a finding of liability against my client, the bank, that came back up on appeal and the court looked at that finding of liability and affirmed, basically affirming a summary judgment or a judgment on the pleadings in favor of the Newmans and against the bank on their third-party complaint. So at the end of Stevens 1, the case went back for a trial on the allegations at issue in the complaint for breach of conversion and misapplication of the proceeds. So, excuse me, breach of fiduciary duty and conversion relating to these letter of credit proceeds. That ends up in the verdict that was before this court in Stevens 2. When the case goes back, the claims of the underlying plaintiffs, the Stevens, against the Newmans went away. So there's no longer an underlying claim that relates to the third-party complaint. So when the case went back, the Newmans sought to leave to amend their complaint to allege what we believe are brand-new claims relating to what's called a pledge agreement. The pledge agreement was never at issue in Stevens 1. It was never part of the complaint. If you pull up and do a word search of your decision in Stevens 1, it's clear the words pledge agreement don't even appear in Stevens 1. Rather, Stevens 1 all involved this letter of credit and the alleged misapplication of the proceeds of the letter of credit. And you might say, well, what is this case really all about? So the Stevens and Thompson sued the Newmans to recover unpaid rent. And there was a dispute between Stevens and Thompson and the Newmans about whether that rent was even owed. The Newmans filed a third-party complaint against my client bank to basically allege, hey, you owe us for these unpaid rents. And that's what the letter of credit proceeds were designed to address. So there was this third-party complaint. When you got a judgment was entered against the bank. And when you received that appeal in Stevens 1, you said in Stevens 1 and 2, they stated a proper cause of action. There was no question that the third-party complaint stated a cause of action and judgment was properly assessed against the bank. So now we're back to what really should have happened on remand.  And it's the bank's position, as reflected in paragraphs 1 and 56 of the Stevens 2 opinion, that the only thing that could happen on remand was this trial limited to damages, about what was at issue after the decision in Stevens 1. So basically a retrial on the issue of damages. The case couldn't be amended. And that's what Judge Salverson really wants to do. She wants to allow the Newmans to amend their complaint to allege these new causes of action and new claims relating to the breach of another document, the pledge agreement. It's our position that she did not have the jurisdiction to do that. And really the question comes back. Ms. Barron? Yes. Ms. Barron? Yes. It seems that Judge Salverson believes that these claims arise out of the same breach of fiduciary duty obligation. What do you say about that? They do not, Your Honor. It's a separate – the pledge agreement is a separate document. That document was from March of 2001. The pledge agreement was from 2001. The later letter of credit proceeds were part of a transaction, and then there was another agreement in October of 2001 between the bank and the Newmans about how those letter of credit proceeds should be allocated. So the pledge agreement is something separate. And I would just refer you back to the Newmans' brief in the Stevens 2 appeal. And actually taking it back a step further, the Newmans' brief in the Stevens 1 appeal says, this case is about depriving the Newmans of any benefit from the proceeds of the letter of credit. The Newmans – and they also say the Newmans were entitled to the benefit of the proceeds of the letter of credit to the extent required to satisfy their outstanding lease payments owed to the Stevens. So it was all about the letter of credit. Now the Newmans are trying to morph it into this pledge agreement. Well, what did they say about the pledge agreement in Stevens 2? Under the first heading under the argument section in their brief, and we included the brief in our supporting record here, the first heading under the argument section says, the claims have always been based on conversion and breach of fiduciary duty, never upon the pledge agreement. Later they say, at the time of the trial court's order before Stevens 1, and the court's Stevens 1 decision, the pledge agreement had not been made up record or otherwise presented to the court. Liability in this case cannot be based upon an agreement that neither the court considered in either directing liability or affirming it. They go on to say, there has never been a claim that the bank breached the pledge agreement, and there has never been a claim that is founded upon that agreement. Again, they say, no claim is based upon the pledge agreement. And then directly to your point, Your Honor, they say on page 17 of that brief, the pledge agreement, and this is a quote, did not create the fiduciary duty at issue in the case. So the pledge agreement is something separate and apart from the letter of credit and how those letter of credit proceeds were to be allocated. The Newman's claims have never been founded upon any duty owed under the pledge agreement or on any breach of the pledge agreement. So I know that Judge Salveson talked about how there was a defect in the pleadings, and that was like giving the Newman's the right to amend. But they affirmatively state there never was a defect. This court found in Stevens 1, in paragraphs 35 and 36, that the amended third-party complaint stated a cause of action. So there was never a defect that could now go back and be amended. Instead, the Newman's are trying to assert a brand-new cause of action, and it's our position that they cannot do that based upon the language in this court's decision in Stevens 2. So really the issue comes down to what can a court do on remand. When you look at the case law, there are several principles that come forward. The first is that you really have to look at each case individually and the procedural posture of each case individually. Here we had a judgment on liability, and the trial was limited to damages only. On remand, the trial court can really take only those actions which conform to the mandate. If the mandate from the court does not contain specific directions, the trial court must look to the appellate court opinion and proceed in conformity with it. The actions taken by the trial court have to be consistent with and conform to the appellate court's opinion. So when you have a case that's reversed and remanded, the trial court is under an obligation to implement the clear and unambiguous language in the appellate court opinion. And here we believe that the language about what should occur on remand is clear and unambiguous. As I mentioned, not just once, but twice, this court says, new trial limited damages flowing from the breach of fiduciary duty and conversion claims, those were the claims at issue in Stevens I, based on the bank's misapplication of the proceeds of the letter of credit. And this court even acknowledges in Stevens II that those are the claims that were properly alleged in the complaint. So now you have the court, the trial court, allowing a brand new cause of action some 20 years after the case was filed. There is no basis to allow that. We believe that- Ms. Barron? Yes. I'm sorry, I know this is awkward, but- It's fine. Was there any discovery or anything done on this new, what you call new cause of action, or would this take things back where you couldn't have a trial on damages only? Well, if they are positioned that if the plaintiffs were to be allowed to amend, to allege this new cause of action, that the bank would certainly have the right to conduct discovery on that new cause of action. There has been no discovery done since the remand. Really, largely it's been legal arguments and motions to dismiss and motion practice. As I mentioned, the claims of the Stevens and the Thompson against the Newmans, so the underlying claims have been dismissed. And it's also our position, if you read our brief, that the court could decide this legal issue, too, of whether there is still an underlying claim such that the third-party claims are still derivative. As you know, 735 ILCS 5-2-406 requires a third-party claim to be derivative of the underlying claim. And here, since there is no underlying claim any longer, the third-party admitting complaint is no longer derivative. So, to go back, yes, if they were allowed to— We don't want to see a 308 on that. We ask that in the interest of judicial economy and efficiency that that issue is fully relieved below. And it is an issue of law that it could be considered by the court if the court so desires. So, briefly, and just to summarize, we believe that on remand, the court, the trial court, only had the jurisdiction to do what this court was directed it to do. And that was a new trial limited to damages flowing from that misapplication of the letter of credit proceeds. And I would just want to emphasize that in Stevens 2, this court even acknowledged what the trial was supposed to be about. In Stevens 2, in discussing Stevens 1, the court said, the trial was intended to be on damages, and then uses the word, only following this court's determination that the Newman's were entitled to judgment on the pleadings as a matter of law. It wasn't intended to be on anything else but on damages from an issue or from allegations where liability had already been assessed. There's no need to reopen this case because of the court's directions to the trial court. And I would just add, this court even acknowledges in Stevens 2 that the case was, the whole issue with respect to the pledge agreement is an issue of liability. It's not an issue of damages. And the court says in Stevens 2 how we never anticipated or we never thought that this was a case about anything other than damages.  So it's something completely separate and apart from what the Stevens had alleged for roughly 20 years. If you don't have any other questions, thank you for your time this morning. You'll have some time for rebuttal. Thank you. Attorney Kester for Appling, you may proceed. Thank you. May it please the Court, Justice Welch, Justice McKinney, Justice Cates, opposing counsel, parties, my name is Chris Kuster and I'm from Terrell offices in Effingham, Illinois. I have the privilege of substituting in this case last fall after a long and complicated history. Mr. Capella retired. We're still upset with him about that. But I want to thank you for accepting this 308 appeal. The last thing we want to do, Justice Cates, is have another 308 appeal. We don't want to have another trial and be back here. We want to leave you alone. So I appreciate and advance your guidance. And I think you did give proper guidance in Stevens 2. I must admit, standing here, I feel a little awkward because I feel like I'm arguing what your words mean. To some degree, I think perhaps I should go sit down and you can tell us what you meant by Stevens 2. One thing that became, and I think you did tell us that, one thing that became immediately apparent to me in the trial court with Judge Christy Salverson was that she was so deferential. Literally, Ms. Barron's right, spent two years on this question about what can be done or not done. Can it be amended? Several rounds of pleadings for argument. And Justice Judge Salverson then, after all of that, painstakingly, carefully, deferentially, went through your opinion and said, absolutely, we are not changing causes of action here. We've got the same cause of action conversion in breach of fiduciary duty. We are curing the defect that this court said, listen, this pledge agreement, you need to make that crystal clear. Now, one thing that's, I think, and again, if you look at Judge Salverson's order, she goes five pages, single-spaced. And then the bank filed a motion to reconsider. Another round of pleadings. Another round of oral argument. And then Justice Judge Salverson issues a nine-page order saying, here's why the movements could amend. Here's why Stevens, too, said I should do this. But, I mean, it's just amazing. I don't know that I've ever read a more carefully authored order in a trial court. So, I mean, clearly, this was not a one-page docket entry in the court file. This was two years of litigation, of going back and forth. And, by the way, I want to thank opposing counsel. Being the new kid on the block, they have been very cooperative and professional. So thank you for that, letting me get up to speed or attempt to. But, again, both in her order and in her words and action, the trial court absolutely analyzed this court's opinion used on remand. Carefully considered, and correctly so, the Eleanor Supreme Court opinion in Clemens v. Mechanical. She referenced that in her order. She also, very correctly, as the trial court and a gatekeeper, and consistent with what you did in Stevens, too, reviewed 616 of the Illinois Codicil procedure. As we all know, subsection C of 616 specifically states, a pleading may be amended at any time before or after judgment to conform the pleadings to the proofs. To conform the pleadings to the proofs. After this court indicated it was a little concerned about the pledge agreement, notwithstanding the fact that, as Judge Salverson pointed out in her order, they have been aware of this pledge agreement for 23 years. It was attached to the complaint. It was always argued for decades. She specifically said, allowing an amendment does not prejudice the bank. And there is certainly no surprise to the bank. The bank has had knowledge of and has been in possession of the pledge agreement since it was signed in 2001. 2001 is 2004. Where has the time gone? The Newmans have consistently argued breach of duty flowing from the pledge agreement, she said in her word. Judge Salverson also indicated, the proposed amendment contains the same claims of conversion and breach of duty in the Justice case, but simply pleads additional facts, additional facts, regarding the Newmans' pledge agreement. So in a case like this, and again, I wasn't there, but you can just imagine the amount of documents and everyone has them. And I think there was a problem. I read that the bank didn't do discovery for 14 years in an underlying case. I can't imagine that, but it didn't. I don't know why. But out of an abundance of caution, out of an abundance of caution, and in deference to what you've told us, how you guided us in Stevens too, we said, here is the pledge agreement. The bank had had it for 23 years. You know all about it. We've always argued it. But here you go. So we are not changing things. Mr. Guster? Yes, ma'am. Was the pledge agreement the basis for calculating damages the first time around? I believe it was, and I believe Mr. Terry Newman testified about if the bank would have done what it should have done. And unfortunately for the bank, there is evidence that they didn't do the things they should have done, and that was the reason for the 137 sanctions. But they had the right under the pledge agreement to retake over these businesses and conduct the business as they had in the past. And the testimony was that they were successful and would have been successful. So that was certainly part of the calculus that Judge Salverson went into with regard to the trial. And that's why, again, to cure what we believe to be a fleeting defect, out of an abundance of caution, we simply attached it to the amendment to the complaint. Frankly, I would be concerned as an attorney if I didn't do that when I got back to the trial court after Stevens too, to cure what you said there might be a problem on. Let's fix this. So we did. And this case will be resolved either by settlement or by trial. No one's hiding anything. Again, we believe they had knowledge for 23 years, as Judge Salverson indicated, but everyone gets a chance to do what they need to do. So again, Judge Salverson painstakingly, carefully, and deferentially got it right. I believe Judge Salverson got it right. It doesn't matter what I think. I guess we could go two to one. No, it doesn't matter what any of us think. This court, you guided us. We used your words. You didn't say, oh, by the way, you cannot amend it. And so Judge Salverson correctly, under the Supreme Court case of Clemens, said when we don't have a specific admonition or remand that says, by the way, there will be no amendments. In fact, I think your words said just the opposite. Hey, let's make it crystal clear for everyone. A taxable budget agreement, let's move on down the road. Let's get this case done. People are getting old and retiring. So that's what we did. But again, it doesn't matter what I think. It doesn't matter what opposing counsel thinks. It doesn't matter, I guess, what Judge Salverson thinks. But I was there. I worked with Judge Salverson, argued, and she was so careful. She was so deferential. And she tried very hard to get it right, and she did. So thank you in advance for taking this and clarifying this. I hope not to be in front of you in this case ever again. Unless you have any questions, I will sit down. Thank you. Thank you. Thank you. Roberta. Just a few points. Counsel talked about deference. The first issue is what jurisdiction a court has to act on remand is not an issue of deference. That's a question of law, which is reviewed de novo. Counsel also mentioned the Clemens case, and I would just ask that you read the Clemens case and compare and contrast it to a later case decided by the Illinois Supreme Court called Crim v. Dietrich, and that case was decided in 2020. Clemens, there was no judgment of liability. There was no judgment of liability and a name-just trial only. Clemens was a trial on the entire case, and it was reversed. And then the plaintiff was denied leave to amend. The appellate court affirmed that. And then the Illinois Supreme Court said, yes, you should be granted leave to amend. But that case was not just liability and damages, not just a question of damages. So Clemens is a little different than our case from a procedural standpoint. And if you look at the Crim case, I think that case shows why you have to actually look at the procedural posture of the case on remand. In Crim, it was actually involved a certified question as well, but the issue was it was a medical malpractice case. The plaintiff had received ‑‑ there was a defense verdict on the issue of general negligence, and the defendant received a defense verdict on the issue of informed consent. The case went up on appeal only on the informed consent issue. The plaintiff chose not to appeal procedurally the plaintiff's choice, the general defense verdict. So when the case went back to the trial court, the issue of informed consent was overturned and reversed. When the issue went back to the trial court, the issue was plaintiff wants a whole new trial. The defendant said, you only get a trial on informed consent. And the Illinois Supreme Court agreed with the defendant. You only get a trial on informed consent. You don't get plaintiff a brand new trial because you chose how to proceed on this case and on this appeal. You didn't appeal the whole thing. We only reversed on informed consent. So you only get a new trial on informed consent. And I raise Crim for the point of look at the procedural posture of the case. Here, there's a finding of liability. There's a trial only on damages. What came before this court was only the issue of damages. And I'd just like to point out a few other points. The pledge agreement was never attached to the original amended or original third-party complaint. The pledge agreement never became an exhibit to a third-party complaint until the fourth amended third-party complaint, which is the last complaint in this case that's before you today. And the fourth amended third-party complaint, it does change things. Third, all these brand-new allegations relating to the pledge agreement. The letter of credit proceeds is almost forgotten in that document. Two of the counts are still titled breach of fiduciary duty and conversion. They all have to do with the pledge agreement, not with the underlying letter of credit. And there's a brand-new count for breach of the pledge agreement itself. Breach of a duty arising from the pledge agreement that the Newmans admitted multiple times were not before this court. And the Newmans, they never argued anything in the trial court with respect to a breach of the pledge agreement. They never even raised a pledge agreement until the first day of trial. And that's set forth at length in the Stevens II decision. So it hasn't been argued for decades. No, it was argued starting on the first day of the damages trial. Thank you, Your Honor. All right. I neglected to mention that Justice Case was not originally on this panel. There was a recusal, and that's why she's appearing in the Zoom. That's the only reason. We will thank you for your arguments. We'll take this matter under advisement and issue a ruling in due course.